# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMIE LASTOVICH,

                    Plaintiff,

v.                                                  Case No. 20-CV-886-JPS

DEBRA KNISBECK, JANE DOE #1,
WELLPATH MEDICAL PROVIDER,             **ORDER**
JANE DOE #2, PRO HEALTH
URGENT CARE, KRISTI
FUERSTNAEU, KAREN SHARP,
SARAH KRALS, and STATE OF
WISCONSIN,

                    Defendants.

---

Plaintiff Jamie Lastovich, a prisoner proceeding in this matter *pro se*, filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his rights under federal law. (Docket #1). Plaintiff also filed a petition to proceed without prepayment of the filing fee (*in forma pauperis*). (Docket #3). Plaintiff has been assessed and has paid an initial partial filing fee of $22.50. 28 U.S.C. § 1915(b). This order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens the complaint.

This case is currently assigned to Magistrate Judge Stephen C. Dries. However, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was referred to this Court for the limited purpose of screening the complaint and resolving the pending filing fee motion. The case will be returned to Magistrate Judge Dries after entry of this order.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On June 15, 2020, Magistrate Judge Dries ordered Plaintiff to pay an initial partial filing fee of $22.50. (Docket #6). Plaintiff paid that fee on June 18, 2020. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #3).

2. **SCREENING THE COMPLAINT**

   2.1 **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2.2    Plaintiff's Allegations

Plaintiff is an inmate who has been in and out of custody at the Dodge County Detention Facility ("DCDF"). (*See* Docket #1 at 1). Defendants are the State of Wisconsin, Wellpath Medical Provider ("Wellpath"), Pro Health Urgent Care, Nurse Debra Knisbeck, Jane Doe Nurses #1–2, Probation Agent Kristi Fuerstnaeu, Probation Agent Supervisor Karen Sharp, and Regional Chief Sarah Krals. (*Id.*).

In February or March 2019, while at DCDF, Plaintiff told Wellpath that he had severe coughing at night, difficulty breathing, and significant pain in his chest. (*Id.* at 2–3). He said that thought he had pneumonia. (*Id.*

at 2). Nurse Knisbeck took a blood sample, gave Plaintiff an extra blanket, and provided "breathing treatment." (*Id*. at 3). Knisbeck told Plaintiff that she would follow up with him once she received his blood test results, but she failed to do so. (*Id*.) Jane Doe Nurse #1 also knew about Plaintiff's medical condition and failed to follow up with him following his blood test results. (*Id*. at 3–4). According to Plaintiff, Knisbeck and Jane Doe Nurse #1 knew that he would be transferring out of DCDF soon, so they intentionally shirked their responsibility to give him medical care. (*Id*. at 4–5).

The following month, in April 2019, Plaintiff was released from custody and went to an alcohol and drug treatment center (Cephas Halfway House). (*Id*. at 5). By then, Plaintiff's medical condition had worsened. (*Id*.) Cephas staff took him to Pro Health Urgent Care, where Jane Doe Nurse #2 ordered an x-ray. (*Id*.) Jane Doe Nurse #2 said she could not see anything in Plaintiff's lungs and thought it might be bronchitis. (*Id*.) She prescribed antibiotics. (*Id*.) According to Plaintiff, antibiotics are ineffective to treat bronchitis. (*Id*. at 5–6).

Plaintiff woke up the next morning coughing up "blood and chunks." (*Id*. at 6). Cephas staff then took him to Waukesha Memorial Hospital, where he was diagnosed with septic pneumonia. (*Id*.) At the hospital, doctors ordered a heart exam which showed that Plaintiff had previously suffered multiple heart attacks that were never treated. (*Id*.) Plaintiff remained at the hospital for about two weeks. (*Id*.) He had 500ml of fluid removed from his left lung and received a life vest defibrillator. (*Id*.)

About two months later, in June 2019, Probation Agent Kristi Fuerstnaeu gave Plaintiff two drug tests. (*Id*. at 7). Plaintiff failed both. (*Id*.) Fuerstnaeu ordered "45–day sanction with Huber privileges for drug treatment and doctor appointments." (*Id*.)

In July or August 2019, Plaintiff received two stents in his heart in relation to his undiagnosed heart attacks. (*Id*.) In September 2019, Plaintiff had a marijuana and cocaine relapse. (*Id*.) Instead of ordering drug treatment again, Fuerstnaeu placed Plaintiff back in custody at DCDF with no Huber privileges. (*Id*.) Plaintiff told Fuerstnaeu that he needed Huber release for his upcoming doctor appointments, but she refused to change the terms of his re-confinement. (*Id*. at 8). As a result, Plaintiff missed his scheduled doctor appointments. (*Id*.)

In November 2019, Plaintiff went back to Cephas. (*Id*.) This time, Cephas staff determined that Plaintiff was "inappropriate for the program." (*Id*.) Probation Agent Supervisor Karen Sharp issued an arrest warrant and Plaintiff was booked into the Waukesha County Jail. (*Id*.) While at the jail, Plaintiff experienced severe chest pains. (*Id*.) Jail staff took him to the hospital. (*Id*.) Plaintiff received an echocardiogram at the hospital which showed that he "immediately" needed a defibrillator. (*Id*. at 8–9).

Plaintiff states that delay and denial of medical care caused him to need a heart transplant. (*Id*. at 10). He continues to experience physical, mental, and emotional pain. (*Id*.) He seeks monetary damages. (*Id*. at 13).

### 2.3    Analysis

To state a claim for relief under 42 U.S.C. § 1983, Plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

"[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests

would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[I]n the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Id*. at 727–28 (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). "The receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Indeed, the use of easier, less efficacious, medical treatment can amount to deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Based on the allegations in the complaint, the Court will allow Plaintiff to proceed with an Eighth Amendment claim that, in February or March 2019, Nurse Knisbeck and Jane Doe Nurse #1 failed to provide proper medical care and/or provided less effective medical treatment for Plaintiff's cough, difficulty breathing, and chest pain because they knew Plaintiff would soon be released from custody. The Court will dismiss the remaining defendants, as explained further below.

### 2.3.1 State of Wisconsin

The Eleventh Amendment prohibits Plaintiff from seeking monetary damages against the State of Wisconsin. *See Morris v. Dickman*, 791 F. App'x 607, 610 (7th Cir. 2019) ("This is effectively a claim for damages against the state and thus it is not permitted under § 1983"). Plaintiff does not seek any injunctive relief in this case. (*See* Docket #1 at 13). Accordingly, the Court will dismiss the State of Wisconsin from this case.

### 2.3.2  Probation Defendants

Regarding defendants Fuerstnaeu, Sharp, and Krals, Plaintiff seeks to proceed with a claim that these individuals worked "in conspiracy" with the other defendants to deny medical care. (*See* Docket #1 at 9). He further asks to proceed with a claim that Fuerstnaeu, Sharp, and Krals violated the Americans with Disability Act ("ADA"). (*Id*. at 11). Finally, Plaintiff notes that Fuerstnaeu denied his request for Huber privileges, so he was unable to go to the doctor of his choosing. (*Id*. at 8).

To state a civil conspiracy claim, Plaintiff must allege that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) their overt acts in furtherance of the conspiracy actually deprived him of constitutional rights. *Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2001) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). Plaintiff must "allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights." *Id*. (quoting *Brokaw v. Mercer Cty.,* 235 F.3d 1000, 1016 (7th Cir. 2000)).

Plaintiff fails to allege facts showing an "agreement" between Fuerstnaeu, Sharp, Krals, and the other defendants to deny him medical care. Plaintiff alleges that these individuals all worked for different agencies and organizations; thus, it's unclear whether they knew each other or ever had communications with each other. Therefore, Plaintiff fails to state a claim for civil conspiracy.

To state a claim under the ADA, Plaintiff must allege "he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Hildreth v. Butler*, 960 F.3d 420, 430–31 (7th Cir.

2020) (quoting *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). Plaintiff fails to identify what disability he has; what services, programs, or activities he did not get the benefit of; and how he was discriminated against because of his alleged disability. Thus, Plaintiff fails to state a claim under the ADA.

Finally, Plaintiff does not have the constitutional right to the doctor of his choosing. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) ("[A]n inmate is not entitled to demand specific care."). So long as Plaintiff had access to medical care at the institution where he was re-confined, he does not have an Eighth Amendment medical care claim against Fuerstnaeu for denying Huber privileges. The Court will dismiss defendants Fuerstnaeu, Sharp, and Krals from this lawsuit.

### 2.3.3   Remaining Medical Care Providers

Plaintiff also sues three private medical care providers: Wellpath, Pro Health Urgent Care, and Jane Doe Nurse #2 (an employee of Pro Health Urgent Care). "When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show the private entity acted under the color of state law." *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009). The Court must find a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is

the alleged infringement of federal rights 'fairly attributable to the State?'"
*Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

The Court must examine the "trilateral relationship" between the prisoner, the state, and the private health care provider which includes: (1) the setting in which the medical care is rendered (i.e. whether the service is provided inside prison walls); (2) the contractual relationship between the state and the medical care provider (i.e. whether the service was voluntary); and (3) the relationship of the private provider to the prisoner (i.e. whether the private provider is replacing medical care or simply assisting with medical care). *Plymouth,* 577 F.3d at 826.

Plaintiff fails to allege facts showing that Pro Health Urgent Care and Jane Doe Nurse #2 acted under the color of state law. Plaintiff does not allege that they provided medical care inside prison walls, that they voluntarily entered into a contract with the state to provide medical care for inmates, or that they replaced the state's responsibility to provide medical care for inmates. They appear to have no ties to the state at all. The Court will dismiss defendants Pro Health Urgent Care and Jane Doe Nurse #2 from this lawsuit.

As to Wellpath, Plaintiff alleges that it provides medical care for inmates at DCDF, which allows for an inference that it replaces the state's obligation to provide medical care for inmates. Plaintiff does not allege, however, that Wellpath had a "custom or policy" that violated his constitutional rights. *See Glisson v. Ind. Dep't of Corr.,* 849 F.3d 372, 379 (7th Cir. 2017) ("The central question is always whether an official policy, however expressed… caused the constitutional deprivation."). Plaintiff only alleges that two nurses at DCDF (who may or may not have been Wellpath nurses) failed to provide proper medical care regarding his

Case 2:20-cv-00886-SCD   Filed 11/17/20   Page 9 of 13   Document 11

specific medical issues. The Court will dismiss defendant Wellpath from this lawsuit.

### 3. CONCLUSION

In sum, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Deliberate indifference to Plaintiff's serious medical needs, namely that in February or March 2019, Nurse Knisbeck and Jane Doe Nurse #1 failed to provide proper medical care and/or provided less effective medical treatment for Plaintiff's cough, difficulty breathing, and chest pain because they knew Plaintiff would soon be released from custody, in violation of the Eighth Amendment. The Court notes that Plaintiff must identify the Jane Doe Nurse #1 as soon as he is able to do so.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (*in forma pauperis*) (Docket # 3) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendants State of Wisconsin, Wellpath Medical Provider, Pro Health Urgent Care, Jane Doe Nurse #2, Kristi Fuerstnaeu, Karen Sharp, and Sarah Krals be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon defendant Debra

Knisbeck pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

IT IS FURTHER ORDERED that defendant Debra Knisbeck shall file a responsive pleading to the complaint;

IT IS FURTHER ORDERED that the agency having custody of Plaintiff shall collect from his institution trust account the **$327.50** balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution;

IT IS FURTHER ORDERED that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

IT IS FURTHER ORDERED that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common

Questions" and "Answers to Pro Se Litigants' Common Questions," along with this order;

**IT IS FURTHER ORDERED** that this case is returned to Magistrate Judge Dries for further proceedings;

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions; and

**IT IS FURTHER ORDERED** that Plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, Plaintiff need not mail copies to Defendants. Defendants will be served electronically through the Court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the court.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 17th day of November, 2020.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge